**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

**JEFFREY BENJAMIN**, Individually and On Behalf of All Others Similarly Situated,
26 Beacon Street, #35C
Burlington, MA 01803

**Plaintiff,**

**v.**

**ANSHU BHATNAGAR,**
c/o Verus International, Inc.
9841 Washington Blvd, Suite 200
Gaithersburg, MD 20878

**CHRISTOPHER CUTCHENS**,
c/o Verus International, Inc.
9841 Washington Blvd, Suite 200
Gaithersburg, MD 20878

**and**

**VERUS INTERNATIONAL, INC.,**
9841 Washington Blvd, Suite 200
Gaithersburg, MD 20878
SERVE ON: Resident Agent,
VCORP Services, LLC,
1013 CENTRE Road Suite 403-B
Wilmington, DE 19805

**Defendants.**

**CASE NO.:**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

Plaintiff Jeffrey Benjamin ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation,

which includes without limitation review and analysis of the following: (a) Verus International Inc.'s ("Verus" or the "Company") public filings with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) press releases and other media issued and disseminated by Verus; (c) news reports and analyses; and (d) other publicly available information concerning Verus.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of all persons and entities that purchased or otherwise acquired Verus securities between June 17, 2019 through October 8, 2020, inclusive (the "Class Period"). Plaintiff pursues these claims against the Defendants (defined below) under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Verus purports to be a multi-line consumer packaged goods company, which develops branded product lines in the U.S. and globally. Verus was purportedly the fourth fastest growing consumer products food company at the end of 2019, which included its acquisitions of the Big League Foods and a controlling interest in NutriBrands.

3. Although the Company portrayed itself as a growth story with 2020 being "the year when all of the elements come together and record setting growth will become the central theme" after the Company had come off "back to back 150%+ growth quarters," the reality was that the Company was not "enter[ing] a period of hypergrowth."[1] In fact, just weeks into 2020, on February 24, 2020, the Company announced that its auditor, CBIZ Mayer Hoffman McCann, LLC ("CBIZ MHM"), advised the Company that it would need to restate its financials due to certain errors in its prior annual and interim periodic filings for the fiscal year 2018 and the first, second and third quarter of 2019.

[1] *See* https://www.verusfoods.com/ceo-message (last visited: March 23, 2021).

4. On this news, the Company's stock price declined from $0.019 to $0.015 on February 25, 2020. Instead of restating the Company's financials to account for these irregularities, the Company permitted its auditor to resign just weeks after touting the auditor's retention as a significant milestone for Verus. Despite this stand, the market nonetheless showed its concern as the price continued its downward trend. The Company's stock price continued downward thereafter closing at $0.011 on March 9, 2020.

5. Thereafter, Verus disclosed that the Company was not prepared to capitalize on its Big League Food acquisition and its Major League Baseball ("MLB") license as the Company struggled to fill orders from retailers approximately nine months after the transaction occurred. Accordingly, the stock declined further to a close of $0.009 on March 17, 2020.

6. During this time, a novel coronavirus strain, COVID-19, exploded from a regional crisis in China into a worldwide pandemic. As COVID-19 spread like wildfire, people sought to protect themselves and others from the spread of the virus. Accordingly, the demand for personal protective equipment ("PPE") and specifically, N95 masks surged.

7. In order to stem the Company's reeling stock price, which had dipped below $0.01 per share, Defendants represented that Verus seized the opportunity presented by the COVID-19 pandemic. On April 3, 2020, Verus announced the acquisition of a controlling 51% interest in ZC Top Apparel Manufacturing, Inc., ("ZTAM"), a purported Philippines-based manufacturer of reusable N95 fabric masks and biohazard suits. According to the press release, Verus was "providing the funding and other resources" to begin fulfilling pending governmental orders on an expedited basis and that "protective gear could eclipse all of [Verus's] existing revenue sources."

8. In the press release announcement, the Company's CEO, Defendant Anshu Bhatnagar ("Bhatnagar"), exclaimed that the ZTAM partnership was a "transformative moment

for our company" given the Philippines-based facility "has a peak production capacity of ten million masks per month" and that it could "operate at near capacity for the foreseeable future." Defendant Bhatnagar explained further that ZTAM offered "an operating facility with an existing product line, so our investment will go directly to produce masks and biohazard suits." Defendant Bhatnagar added that "[w]e expect this to be a very profitable enterprise within the first month of operation, with a positive impact on our future projections."

9. On this news, the Company's stock price rose from $0.014 to a close of $0.018 on April 3, 2020 following the announcement. Over the next few days, the Company's stock price continued to climb, closing at $0.021 on April 6, 2020.

10. However, in the weeks and months that followed, the Company's stock price declined as the truth was slowly revealed. First, Verus revealed that rollout of sample masks and other PPE were encountering "logistical issues." Second, the Company needed to secure a facility in Vietnam, seemingly unrelated to ZTAM, to produce sample masks months after the announcement. Third, ZTAM Chief Executive Officer ("CEO") Ronald Ian Bilang ("Bilang") cryptically tweeted about a potential escalation of regulatory investigations, involvement of the Office of International Affairs ("OIA") and continued deafening silence from Verus and Defendants.

11. Finally, on October 8, 2020, Verus announced that the Company issued a "Repayment and Notice of Rescission of Transaction" to ZTAM, as a result of "failure of contractual performance and breach of contract." According to the press release, ZTAM did not register Verus's "controlling interest of 51%" as required under the term sheet dated April 3, 2020.

12. At the time of this announcement, the Company's stock price closed at just $0.002 per share, a total decline 90.5% from when Verus announced its controlling interest in ZTAM.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District. Many of acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this District.

16. In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail and interstate telephone communications.

## PARTIES

17. Plaintiff Jeffrey Benjamin, as set forth in the accompanying certification, purchased Verus shares during the Class Period and suffered damages as a result of the federal securities law violations by and through the false and/or misleading statements and/or material omissions alleged herein.

18. Defendant Verus is incorporated under the laws of Delaware with its principal executive offices located in Gaithersburg, Maryland. Verus common stock is not listed on a national, formal exchange and trades over-the-counter ("OTC").

19. Defendant Anshu Bhatnagar is the current Chairman of Verus and at all relevant times, served as the Chief Executive Officer of Verus. On or around February 17, 2021, Defendant Bhatnagar resigned from his position as CEO and the Company appointed Apurva (Andy) Dhruv, President of Verus Foods (Americas) to the position of CEO.

20. Defendant Christopher Cutchens was the Chief Financial Officer ("CFO") of Verus at all relevant times. On or around December 9, 2020, Defendant Cutchens announced his resignation as CFO, effective January 8, 2021.

21. Defendants Bhatnagar and Cutchens (collectively referred to herein as the "Individual Defendants") because of their positions within the Company, possessed the power and authority to control the contents of the Company's filings with the SEC, press releases and presentations and other communications with and to the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

22. At all relevant times, Verus, through its wholly-owned subsidiary, Verus Foods Inc., purported to be an international supplier of consumer food products, focused on international consumer packaged goods, foodstuff distribution and wholesale trade. The Company marketed consumer food products under its brand primarily to supermarkets, hotels and other members of the wholesale trade. The Company initially focused on frozen foods, particularly meat, poultry, seafood, vegetables and later, French fries with beverages as a second vertical. In 2018, Verus added cold-storage facilities and began seeking international sources for fresh fruit, produce and similar perishables, as well as other consumer packaged foodstuff with the goal to create vertical farm-to-market operations. The Company also explored new consumer packaged goods in non-food categories, such as cosmetic and fragrances.

23. The Class Period begins on June 17, 2019, when the Company filed its Form 10-Q for the second quarter of fiscal 2019 with the SEC and issued a pre-market press release announcing its earnings. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-Q under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. According to the filing and press release, Verus reported record revenue of $2.9 million, a year-over-year increase of 153% and a gross margin of approximately 15.4%, up 348 basis points compared with the same period in 2018. In the press release, Defendant Bhatnagar stated that the results were "more evidence that our growth cycle had already begun, even before our recent grow initiatives." Further, Defendant Bhatnagar touted the acquisition of Big League Foods "in the last week of Q2/19 and our latest capital infusions were signed after the quarter end." Defendant Bhatnagar

declared that "Q2/19 should be viewed as a strong launch pad for even better growth in the second half of 2019."

24. Following this news, the Company's stock closed at $0.034 per share.

25. On September 10, 2019, the Company filed its Form 10-Q for the third quarter of fiscal 2019 with the SEC and issued a press release announcing its earnings. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-Q under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. Verus reported an all-time record revenue of $3.48 million, an increase of 154% over the $1.37 million reported in the same period in 2018. The Company reported gross margin of approximately 14% and excluding "the MLB business" gross margin was 16.4%. Verus also reported that operating expenses as a percentage of revenue (backing out non-cash, stock-based compensation) increased to 24.8% of revenue compared to 13.8% in the prior quarter "due to start-up costs associated with the Major League Baseball business."

26. In the press release, Defendant Bhatnagar stated that the "Q3/19 results highlighted the growth potential of our business in the [Gulf Cooperation Council], which accounted for the majority of the revenue." Defendant Bhatnagar explained that "[a] large portion of the expense to launch our new MLB business fell into this quarter without much of the revenue, so the bottom-line results were affected by timing." Defendant Bhatnagar further declared that "our MLB business only accounted for 1.6% of revenue in this triple-digit growth quarter." In an attempt to address investor concerns, Defendant Bhatnagar explained that "[i]t is natural to expect a few hiccups during any product line start-up, but the MLB progressed rather smoothly through its first production runs[.]"

27. Following this news, the Company's stock price dropped from $0.035 to a closing price of $0.025 on September 11, 2019 and continued downward to $0.022 per share on September 12, 2019.

28. On December 30, 2019, Verus issued a press release entitled "Verus International Engages Top Ten National Public Accounting Firm" and therein, announced the retention of CBIZ MHM as the Company's new registered public accounting firm. According to the release, CBIZ MHM is the financial services division of CBIZ, Inc., and one of the top ten accounting providers in the U.S. The Company explained that Mayer Hoffman McCann P.C. ("MHM") would provide all attest services, including audit and review services, and CBIZ would provide all non-attest services including consulting, tax and advisory services. Defendant Bhatnagar was quoted in the press release, as follows: "Engaging a top-tier national public accounting firm will provide investors and financial partners with an added measure of confidence as we continue growing the Company."

29. On this news, the Company's stock price increased from $0.018 per share closing price on December 27, 2019 to $0.020 by close on December 31, 2019.

30. On January 28, 2020, Verus filed a notification of inability to timely file its Form 10-K with the SEC. According to the filing, "[t]he compilation, dissemination and review of the information required to be presented in the Form 10-K for the relevant fiscal year has imposed time constraints that have rendered timely filing of the Form 10-K impracticable without undue hardship and expense to the Registrant."

31. The statements referenced in ¶¶ 23-30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business and operations, which were known to Defendants or

recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclosed that: (i) Verus lacked the requisite resources, infrastructure and/or expertise to exploit its Big League Foods brand and its MLB license; (ii) the Company issues in production ramp-up were not fully resolved to enable the Company to fulfill customer orders; (iii) as a result, the Company's prospects and outlook were not as represented; (iv) the Company's internal controls for financial reporting and accounting were not sufficient with specific respect to stock-based compensation and classification of equity instruments; (v) as a result, the Company's financial results, outlook and prospects were materially worse than represented; and (vi) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**The Truth About the State of the Company's Operations and Financial Reporting Are Slowly Revealed to the Market**

32. On February 24, 2020, the Company filed a Form 8-K with the SEC and therein disclosed that as of February 18, 2020, the Company's auditor, MHM, notified the Company's Board of Directors of its resignation. The Company represented that Verus and MHM "had certain unresolved discussions on whether, and how, to correct prior period financial statements" for errors concerning unrecorded stock-based compensation and classification of equity instruments (including conversion features, warrants, and stock compensation warrants) subsequent to the Company having an insufficient number of authorized shares to settle certain equity classified instruments. Verus also disclosed that "MHM believes the errors are material to the prior period financial statements, including the annual and interim periods affected, and therefore should be corrected by restatement the financial statements previously filed (e.g. via a Form 10-K/A and Form 10-Q/A)."

33. Then, one day later, on February 25, 2020, Verus issued a press release that provided an operational update leading up to the completion of the Company's delayed 2019 Form 10-K. Therein, the Company reported that MHM elected to resign because Verus's audit would not be completed within the required timeline. Verus represented that "the Company has already completed most of the financial audit efforts, so a new audit firm will be able to hit the ground running and achieve a timely audit completion." Defendants further reiterated its disagreement with MHM and its belief that the unresolved issues did not warrant "restating the financial statements previously filed." The Company stated that it "identified a new audit firm, which it expects to engage and announce shortly via Form 8-K." Verus also reiterated that its "MLB business will be our fastest growing segment in the first half of the year, however all of our product lines are experiencing strong customer demand, which will provide the potential to diversify revenue sources over the next several quarters." Based on that, the Company stood by its "projection for triple-digit growth during 2020."

34. On this news, Verus's stock price sank from $0.019 to a close of $0.015 per share on February 25, 2020. The Company's stock price would continue to decline, closing at just $0.010 on March 9, 2020.

35. On March 11, 2020, Verus's stock price briefly resurged with announcements of candy orders from the Company's Big League Foods subsidiary with retailers TJX Companies and Big Five Sporting Goods. On March 12, 2020, the Company made a similar announcement regarding retailers HomeGoods, Weis Markets and Major League Stadium Stores. However, after the temporary spike on March 11, 2020, the Company's true condition became more apparent as the market fully digested the news amidst the background of the burgeoning COVID-19 pandemic.

36. The Company explained in both the March 11 and 12, 2020 press releases that Verus could not meet these customer orders and would need to "scale up in subsequent delivery cycles." These disclosures were in stark contrast to Defendant Bhatnagar's statement from just weeks earlier. Although Verus is purportedly an international food distribution company and Defendant Bhatnagar regularly cited his adeptness at handling such a venture, nearly a year after acquiring Big League Foods and the MLB license, the Company was unprepared to meet customer orders despite prior representations concerning ramp-up of production. As a result, the question whether Verus could scale its operations with the pandemic looming was highly dubious. The market reacted accordingly and the stock ticked down further to $0.009 per share on March 17, 2020.

**The Company Announces the ZTAM Transaction**

37. Given the Company's dubious outlook and failure to deliver returns on its prior acquisition, Verus sought to cash-in on the pandemic-induced demand for PPE and specifically, N95 masks. Therefore, on April 3, 2020, the Company issued a press release announcing that the Company acquired a 51% controlling interest in ZC Top Apparel Manufacturing (or ZTAM), which purported to be a Philippines-based manufacturer of reusable N95 fabric masks and biohazard suits. The press release stated the following:

> [ZTAM] produces a highly sought-after, premium mask that is N95 compliant and constructed of a washable shell and a multi-layer filter that can provide protection for three days before replacement. The multi-layer filter consists of BFE99, PFE99 melt-blown and spun-bond polypropylene, which are the same materials used in medical surgical and N95 disposable masks. The masks also feature an activated carbon filter that functions like a high-efficiency particulate air (HEPA) filter, giving an additional layer of protection compared to a regular N95 mask.
>
> The [ZTAM] masks also incorporate exhalation valve technology to facilitate smoother breathing, along with cotton construction to create

> a high-quality reusable mask that is more comfortable and cost effective than many other anti-viral mask designs.
>
> "Investors may be surprised to see us enter this business, but we have international trade experience that is highly sought after in this current environment. We were approached early in the COVID-19 crisis by the management team at [ZTAM], who were experiencing an overwhelming number of requests for protective gear from governments and other entities around the world," explained Verus International CEO Anshu Bhatnagar. "We are providing the funding and other resources to begin filling these pending orders as quickly as possible. We are not yet prepared to provide revenue estimates, but based on initial demand, we believe protective gear could eclipse all of our existing revenue sources."
>
> The new ZTAM subsidiary current has request for quotes (RFQs) from the U.S. Government and other governments, agencies, and sellers on multiples continents. The Philippines-based facility has a peak production capacity of ten million masks per month. Based on pending orders, the Company believes that it can operate at near capacity for the foreseeable future.
>
> "This is a transformative moment for our company, giving us a new subsidiary that more than doubles our backlog overnight," said Bhatnagar. "We worked hard to get the resources in place to unlock this unused capacity at a time when the world needs it most. This is an operating facility with an existing product line, so our investment will go directly to produce masks and biohazard suits. We expect this to be a very profitable enterprise within the first month of operation, with a positive impact on our future projections."

38. On this news, the Company's stock rose from a close of $0.014 per share on April 2, 2020 to $0.018 per share on April 3, 2020 and reached $0.021 per share on April 6, 2020 for a total increase of 50% over four days.

39. The statements referenced in ¶ 37 were materially false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's financial outlook, business and operations, which were known to or recklessly disregarded by Defendants. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Verus's controlling interest was never officially registered in the Philippines; (ii)

Verus lacked the requisite resources, infrastructure, and/or expertise to unlock the capacity of ZTAM's facilities, to the extent it existed; (iii) the Company's international trade experience was useless without a product; (iv) even in the most optimistic case, the ZTAM transaction was unlikely to have an immediate financial impact on Verus; (v) as a result, the Company's financial results, outlook and prospects were materially worse than represented; and (vi) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**The Truth is Gradually Revealed About the ZTAM Transaction**

40. On April 13, 2020, the Company filed its Form 10-K with the SEC and issued a press release regarding the Company's earnings for the 2019 fourth quarter and full year ended October 31, 2019. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-K under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. The Company touted all-time record revenue of $4.7 million, an increase of 116% over the $2.2 million in the same period in 2018. Verus reported gross profit margin of 15.2%, approximately 230 basis-points higher than the $12.9% reported in fiscal 2018.

41. In the press release, Defendant Bhatnagar lauded the Company's efforts, noting that "[t]o manage triple digit growth during a retooling effort shows the strength of our current operations, but we expect to return to a higher growth rate in upcoming quarters." Further, Defendant Bhatnagar confirmed that "[w]ith the filing of the 10-K, we are now current with our reporting and can resume our efforts to gain commercial sources of working capital. As expected, we were not required to restate any prior quarters[.]"

42. Later that same day, the Company hosted an earnings conference call during which Defendant Bhatnagar addressed the ZTAM acquisition and then-current status of those operations:

> First, we'll start with the challenges. Although [ZTAM] is considered a strategic business, which allows it to operate while other industries are shut down, the Philippine Government closed travel inbound and outbound for the month of April. In the interim, the company is making everyday simple masks to meet the government mandate that all citizens must wear masks in public. Verus is currently exploring charter plane options to get the N95 line running at full capacity, including moving some production to other countries to create two sources of supply.
>
> So, we're preparing some logistical alternatives if the Philippine travel ban extends beyond April. The duration of production difficulties is relatively short compared to the ongoing demand metrics. We're still assessing what kind of capacity we can generate from the plant, particularly based on the current travel conditions. But we can model out the revenue impact with a good degree of accuracy on a unit basis. We won't be disclosing our exact margins, but suffice to say this will be our most profitable product category to-date. We do not expect shipments to be meaningful after the end of April.
>
> * * *
>
> On a global basis, we could see two high demand periods, one that will pay out in the US and other northern hemisphere countries in summer 2020, then a second demand curve during the upcoming flu season in October 2020 through April 2021. The restocking cycle may not even start until second half of 2021. But unlike some past cycles, where stockpiles were left unfulfilled, the scrutiny on this issue will guarantee significant restocking following a return to normal for flu seasons. With this in mind, masks and equipment sales should remain robust into at least mid-2021.
>
> As a result, we're working to get the plant ramped up as quickly as possible to capture some part of the current hyper demand. The capital outlay for Verus is relatively small, less than $500,000, opening up a brand new product line with a potential to become a significant contributor to future revenues. This is a very low risk way to create substantial and profitable product line in a space where we can use our skill sets in international trade."

43. On this news, the Company's stock price declined 25% from $0.020 on April 13, 2020 to close at $0.0150 per share on April 14, 2020. The stock would continue to decline over the next week, closing at $0.0120 on April 21, 2020.

44. Then, on April 24, 2020, Verus issued a press release and therein, provided an update on its new medical supply division. According to the press release, the Company finalized its first order, an $820,000 agreement for disposable medical gowns with a Danish customer. Therein, the Company also announced that its new medical division will be organized under the Verus Cares name. With respect to operations, the Company stated "the logistical issues have improved to the point where the Verus Cares division expects to begin shipping sample quantities of masks within just a few weeks to prospective customers."

45. Days later, on April 29, 2020, the Company filed its Form 10-Q with the SEC and issued a corresponding press release highlighting quarterly results. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-Q under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. Verus disclosed record revenue of $6.2 million, an increase of 153% over the $2.4 million reported in the same quarter for 2019. The Company reported gross profit margin also improved to 18.4% over 15% in the same quarter in 2019. Despite these developments, the Company incurred operating expenses of $2.7 million, $2.3 million more than the same period in 2019, which was primarily due to a $1.7 million increase in stock-based compensation and higher expenses across all categories. The Company's net loss was $2.5 million for the quarter, compared to a loss of just $0.3 million in the same period of 2019. With respect to Verus Cares, the Company noted the "remaining challenges are mostly logistical," however, also emphasized that "demand is tremendous[.]"

46. On this news, the Company's stock price continued downward from $0.014 per share at close on April 29, 2020 to $0.011 per share at close on April 30, 2020.

47. On May 1, 2020, the Company issued an update on the Verus Foods Twitter page.[2] The update revealed that ZTAM production was focused "exclusively on domestic production of consumer-style masks to meet the Philippines mandate that all citizens wear masks in public" and that "[d]ometstic Philippine demand is proving to be more significant than expected – as TAM is the largest producer in the country." To address this logistical problem, Verus stated that "[w]e have successfully secured production capacity and manufacturing materials in Vietnam, where raw material logistics are easier" and the Company "expect[s] to begin shipping product samples and begin fulfilling orders within the next week."

48. On this news, Verus's stock continued its plunge, closing at $0.009 per share on May 4, 2020.

49. On May 6, 2020, the Company filed a Form 10-K/A with the SEC. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-K/A under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. Therein, the Company disclosed an amended and restatement employment agreement with Defendant Bhatnagar. According to the filing, in pertinent part:

> The term of the Bhatnagar Employment Agreement will continue until December 31, 2020 unless extended or earlier terminated pursuant to the terms of the Bhatnagar Employment Agreement. Pursuant to the terms of the Bhatnagar Employment Agreement, Mr. Bhatnagar shall be entitled to receive five forms of compensation to include cash-based salary, stock-based salary, annual cash-based bonus, annual grants of restricted common stock and the opportunity to participate in the Company's equity plans. Pursuant to the terms of the Bhatnagar Employment Agreement, Mr. Bhatnagar shall, among other things, (i) receive an annual base salary of $350,000 which may be increased at the sole discretion of the Company's Board, (ii) an annual cash bonus

---

[2] *See* https://twitter.com/Verus_Foods/status/1256307971602014209 (last visited March 15, 2021).

> at the sole discretion of the Board, (iii) a bonus in an amount equal to up to 100% of Mr. Bhatnagar's then base salary at the sole discretion of the Board, and (iv) a stock-based bonus at the sole discretion of the Company. In addition, Mr. Bhatnagar received a warrant to purchase up to 471,883,795 shares of the Company's Common Stock at an exercise price of $0.006 per share.

50. On June 11, 2020, the Verus Foods Twitter account posted that "[w]e received our first shipment of masks from our Vietnam supplier and will now begin the process of shipping samples to potential customers!" The tweet included a photo of Defendant Cutchens wearing one mask and holding others. After more than two months, Verus finally had sample masks to deliver to potential customers, which were produced in a facility seemingly unrelated to ZTAM. By this time, the Company's stock was in a weeks-long descent and closed at $0.0040 per share on June 11, 2020.

51. On June 16, 2020, the Company filed a Notification of inability to timely file Form 10-Q with the SEC. Six days later, on June 22, 2020, the Company filed on Form 10-Q with the SEC and issued a press release regarding the Company's financial results. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-Q under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. The Company's reported revenue of $4.6 million, an increase of 58% from the same period in 2019 and that due to the pandemic, a portion of expected Q2 revenue would be shifted into the following quarter. The Company also saw a slight gain in gross margin from 15.4% in the same period in 2019 to 15.8%. Verus also reported operating expenses of $7.7 million, a $7 million increase from the same quarter in 2019, which was primarily attributable to the CEO's employment agreement and the accompanying $6.5 million stock compensation expense. The Company reported an operating loss of $7.0 million, which was $6.8 million higher than the $0.2 million reported for the same period in 2019. Verus's net loss was $7.3 million for

the quarter compared to net income of $2.2 million in the same period in 2019. In the press release, Defendant Bhatnagar stated the following, in pertinent part:

> "Our Verus Cares division has been much more of a project than we expected, with unanticipated supply issues creating significant initial delays in our ability to pursue business. So, that division remains the wild card in our revenue mix. We now have adequate gown and mask supply in place and are reassessing the sales strategy to stimulate better results. Our expectations for triple-digit growth are based on our legacy business, so we have great confidence in our growth rates through the remainder of the year. Coming out of this pandemic, we intend to keep it simple for a while – concentrating on our core business units and areas with the fastest growth."

52. Despite this news, the Company's Form 10-Q disclosed nothing further about ZTAM beyond a generalized reference to the transaction, which stated:

> On April 3, 2020, the Company entered into a binding agreement ("Acquisition Agreement") with ZC Top Apparel Manufacturing ("ZC Top"), which was confirmed and superseded by a Securities Purchase Agreement on May 8, 2020 (the "May 8, 2020 Agreement"), wherein the Company acquired a controlling 51% interest of the issued and outstanding common voting shares of ZC Top (the "Majority Interest"). The purchase price for the Majority Interest was $100,000, which was paid by the Company and additional working capital can be provided by the Company when needed, from time to time, in the form of purchase financing, letters of credit, bank guarantees, merchant cash advances or any other structure that may be required to facilitate the business. ZC Top is a Philippines-based maker of highly sought-after reusable N95 fabric masks and biohazard suits.

53. With this news, the Company's stock price, which closed at $0.005 per share on June 22, 2020, declined to $0.003 per share on June 30, 2020.

54. On June 25, 2020, the Company issued a press release announcing its newest operating division, Pachyderm Labs, which purportedly would target the consumer cannabidiol ("CBD") products market. In the press release, Verus described Pachyderm Labs as "a stealth

initiative under development for nearly a year, so it enters the Verus product family with a fully developed product line, supply chain, distribution channels, inventory, and initial customers."

55. On August 4, 2020, Verus issued a press release to provide "a corporate update." Therein, Verus stated the following, in pertinent part:

> As part of a long-term plan to create a dedicated division focused on consumer health products, Verus is streamlining its operations by combining its Verus Cares division and CBD-products operations under a single Pachyderm Labs subsidiary. As part of this realignment, the Pachyderm team will take over a portion of the sales and development efforts at Verus Cares.

56. On this news, the Company stock price declined from $0.003 per share to a close of $0.002 per share on August 4, 2020.

57. On August 12, 14, and 20, 2020, respectively, the purported Twitter account of Ronald Ian Bilang, the CEO of ZTAM, posted three cryptic, yet ominous tweets. First, on August 12, 2020, Mr. Bilang tweeted "Defeaning silence. what happened to all of the confidence?" (sic).[3] Then, on August 14, 2020, Mr. Bilang abruptly tweeted: "SEC Escalation[.]"[4] On August 20, 2020, Mr. Bilang tweeted "OIA working[.]"[5] On August 20, 2020, the Company's stock price closed at $0.001 per share, down nearly 95% from the price when the transaction with ZTAM was first announced.

58. On September 21, 2020, the Company filed its Form 10-Q with the SEC and issued a corresponding press-release. Individual Defendants Bhatnagar and Cutchens signed and certified this Form 10-Q under the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed. The Company

---

[3] *See* https://twitter.com/bilang_ian/status/1293679881578938371 (last visited: March 23, 2021).
[4] *See* https://twitter.com/bilang_ian/status/1294407608971870208 (last visited: March 23, 2021).
[5] *See* https://twitter.com/bilang_ian/status/1296441601338880000 (last visited: March 23, 2021).

reported revenue of $6.2 million compared to $3.5 million and gross profit margin of 14.8% compared to 14.2% in the same period in 2019. Verus also reported a net loss of $1.3 million. Neither the press release, nor Form 10-Q filing provided any detail regarding ZTAM or the Company's relationship aside from a blanket statement in the Form 10-Q, which stated as follows:

> On May 8, 2020, the Company entered into a Securities Purchase Agreement (the "May 8, 2020 Agreement") with ZC Top Apparel Manufacturing ("ZC Top") which confirmed and superseded a binding agreement dated April 3, 2020 (the "Acquisition Agreement") wherein the Company acquired a 51% interest of the issued and outstanding common voting shares of ZC Top (the "Majority Interest"). The purchase price for the Majority Interest was $100,000, which was paid by the Company. Additional working capital can be provided by the Company when needed, from time to time, in the form of purchase financing, letters of credit, bank guarantees, merchant cash advances or any other structure that may be required to facilitate the business. ZC Top is a Philippines-based maker of highly sought-after reusable N95 fabric masks and biohazard suits.

59. The statements referenced in ¶¶ 40-58 were materially false and/or misleading because they interpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) Verus's controlling interest was never officially registered in the Philippines; (ii) Verus lacked the necessary resources, expertise and/or infrastructure to unlock the capacity of ZTAM's facilities to produce millions of masks, to the extent that capacity existed; (iii) the Company's international trade experience was useless without a product; (iv) the Company had difficulty communicating with ZTAM regarding production; (v) as a result, the Company's financial results, outlook and prospect were materially worse than represented; and (vi) as a result of the foregoing, Verus's public statements were materially false and misleading at all relevant times.

60. On September 22, 2020, the Company hosted a conference call to discuss its earnings. On the call, the following exchange occurred regarding ZTAM:

> Q – Analyst
>
> Hi Anshu. Just want know whatever happened to TAM, that 51% ownership with that apparel company that you bought? Because I know you went elsewhere to get the sales, but it just seems to have disappeared and it was pretty ugly on Twitter?
>
> A – Anshu Bhatnagar
>
> Yes, so that's – yes, we have to basically get products from Vietnam because of the shutdown in the Philippines. And with respect to that whole Twitter sort of mess that was going on, that's something we're basically taking care of. That's something we're addressing.
>
> Q – Analyst
>
> But do you still own the company and are there any sales because you did buy 51%?
>
> A – Anshu Bhatnagar
>
> Yes, so that's something – we're really not in a position to comment on that right now, but we'll be putting out a statement on that shortly.

61. As the market digested this ominous news, the Company's stock price declined to a close of $0.001 per share on September 25, 2020.

**The Truth Is Fully Revealed About the Company's Interest in and Relationship with ZTAM**

62. On October 8, 2020, pre-market, Verus issued a press release entitled "Verus International Issues Update on zc Top Apparel Manufacturing." In this press release, Verus "reported that it issued a Repayment and Notice of Rescission of Transaction to [ZTAM], as a result of [Z]TAM's failure of contractual performance and breach of contract." According to Verus, ZTAM did not register "the controlling interest of 51% in the name of the Company as

required under the Binding Term Sheet dated April 3, 2020." The press release also contained the following statement from Defendant Bhatnagar:

> "We approached the PPE business as a time-sensitive opportunity, with full knowledge that this might involve a narrow window and relatively short time frame for success," said Verus CEO Anshu Bhatnagar. "We were glad to have some early success, which made this a modestly profitable effort. However, as we moved farther into this arrangement with TAM, the potential to extend this relationship into a long-term partnership became less desirable on multiple levels. One of the essential elements in any foreign-run operation is the importance of maintaining a solid and open working relationship, something that grew increasingly difficult. This business represented an attempt to be nimble and expeditious in capturing a market opportunity, but unfortunately, TAM did not meet our standards for a long-term partnership. Their breach of contract made continued engagement impossible.

63. At the market's close on October 8, 2020, the Company's common stock closed at $0.0020, down nearly 90.5% from the closing price when the Company announced the acquisition of a controlling interest in ZTAM.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Verus securities between June 17, 2019 and October 8, 2020, inclusive, and who were damaged thereby ("Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors and/or assigns, and any entity in which the Defendants have or had a controlling interest.

65. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Verus's shares were actively traded over-the-counter. The exact number of Class members is unknown to Plaintiff at this time and can only be

ascertained through appropriate discovery. Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Verus shares were publicly traded during the Class Period. Record owners and other members of the Class may be identified from records maintained by Verus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66. Plaintiff's claims are typical of the claims of the members of the Class as they were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting the individual members of the Class. Among the questions of law and fact common to the Class are:

a. Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations and prospects of Verus; and

c. To what extent the members of the Class have sustained damages and the proper measure of damages.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

70. The market for Verus's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, the Company's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Verus's securities relying upon the integrity of the market price of the Company's securities and market information relating to Verus and have been damaged thereby.

71. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Verus's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Verus's business, operations and prospects as alleged herein.

72. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Verus's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated based on that information at all relevant times.

Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

73. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

74. During the Class Period, Plaintiff and the Class purchased Verus securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed causing investors' losses.

## SCIENTER ALLEGATIONS

75. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of Verus were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Verus, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading misstatements and/or their association with the Company which made them privy to confidential proprietary information concerning Verus, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

76. The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged herein. None of the statements alleged herein is a "forward-looking statement" and no such statement was identified as a "forward-looking statement" when made. Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time when the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

77. In the alternative, to the extent that the statutory safe harbor does apply to any statement pled herein that is deemed to be forward-looking, the Defendants are liable for such false forward-looking statements because, at the time each such statement was made: (i) the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statement was materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading; and/or (ii) each such statement was authorized and/or approved by a director and/or executive officer of Verus who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made.

78. None of the historic or present tense statements made by the Defendants was an assumption underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

79. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80. This Count asserted against all of the Defendants, is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

81. During the Class Period, Defendants, individually and in concert, directly or indirectly disseminated or approved the false and/or misleading statements specified above, which they knew or deliberately disregarded were false and/or misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading.

82. The Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

a. Employed devices, schemes and artifices to defraud;

b. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and/or

c. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Verus securities during the Class Period.

83. The Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Verus were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and

knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants, by virtue of their receipt of information reflecting the true facts regarding Verus, their control over and/or receipt of and/or modification of Verus's allegedly materially false and misleading statements, and/or their association with the Company, which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

84. The Individual Defendants, who are senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Verus personnel to members of the investing public, including Plaintiff and the Class.

85. As a result of the foregoing, the market price of Verus securities was artificially inflated during the Class Period. Unaware of the falsity of the Defendants' statements and/or omissions, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Verus securities during the Class Period in purchasing Verus securities at prices that were artificially inflated as a result of the Defendants' false and misleading statements.

86. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

87. By reason of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other

members of the Class for the substantial damages they suffered in connection with their purchases of Verus securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

88. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

89. During the Class Period, the Individual Defendants participated in the operation and management of Verus and conducted and participated, directly and indirectly, in the Company's business affairs. As a consequence of their senior positions, the Individual Defendants knew or recklessly disregarded the fact that the adverse information specified herein had not been disclosed to, and was being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was and is solely under the control of the Defendants.

90. As officers and/or directors of a publicly-owned company, the Individual Defendants had a duty to disseminate accurate and truthful information about the Company to the investing public, and to correct promptly any public statements issued by Verus that had become materially false or misleading.

91. As a result of their positions of control and authority as senior officers and/or directors of the Company, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that Verus disseminated in the marketplace during the Class Period concerning its business operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Verus to engage in the wrongful acts complained of herein. The Individual Defendants therefore were "controlling

persons" of Verus within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged herein, which artificially inflated the market price of Verus securities.

92. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Verus.

## PRAYER FOR RELIEF

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff as class representative and the Plaintiff's counsel as Class Counsel;

(B) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and expert fees; and

(D) Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: April 23, 2021

/ s /

John B. Isbister (#00639)
jisbister@tydings.com
Daniel S. Katz (#01148)
dkatz@tydings.com
**TYDINGS & ROSENBERG LLP**
One East Pratt Street, Suite 901
Baltimore, MD 21202
Tel: 410-752-9700
Fax: 470-727-5460

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney (Pro Hac to be applied)
guiney@whafh.com
Patrick Donovan (Pro Hac to be applied)
donovan@whafh.com
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114

***Counsel for Plaintiff***